**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RON LANTZ, DENNIS GRIBBINS, RICHARD ALLEN and CLARENCE ALVORD, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 06 C 5932 |
| AMERICAN HONDA MOTOR COMPANY, INC., | ) ) ) ) | Judge Nan R. Nolan |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Ron Lantz, Dennis Gribbins, Richard Allen, and Clarence Alvord filed a class action complaint against Defendant American Honda Motor Company, Inc. ("Honda"), alleging a variety of state law claims arising from Honda's deceptive and unlawful conduct in designing, manufacturing, marketing, distributing, selling, servicing and/or failing to service GL1800 Gold Wing Motorcycles. Specifically, Plaintiffs claim that the Gold Wing GL1800 model has a design defect that causes it to wobble at low speeds between 25 and 40 mph, preventing owners from using the motorcycle for touring at higher speeds and long distances, as advertised and intended. Plaintiffs filed their initial class action complaint on November 1, 2006, with jurisdiction premised on the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Plaintiffs sought to apply California law to a nationwide class, alleging that Honda violated the California Business and Professions Code, Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Count I) and §§ 17500 *et seq.* (Count II); the California Civil Code, Cal. Civ. Code §§ 1750 *et seq.* (Count III); the California Commercial Code, Cal. Comm. Code §§ 2313 and 2314 (Counts IV and V); and California's common law of unjust enrichment. Alternatively, Plaintiffs asserted several claims under the laws of the District of Columbia and every

state except California, including violation of consumer protection laws, breach of state express and implied warranties, and common law unjust enrichment.

The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and on May 14, 2007, the court granted in part and denied in part Honda's motion to dismiss Plaintiffs' claims. *Lantz v. American Honda Motor Co.*, No. 06 C 5932, 2007 WL 1424614 (N.D. Ill. May 14, 2007). The court dismissed all of the California state law counts on conflicts grounds, noting that "Plaintiffs purchased and used their Gold Wing motorcycles in Florida and Illinois, the states in which they reside"; "[a]ny alleged fraud made in connection with the purchases occurred at the points of purchase in those two states"; "Plaintiffs received and acted on the representations in Florida and Illinois, and that is where the parties' relationships are centered"; and "Plaintiffs negotiated and contracted to buy the motorcycles in Florida and Illinois, and that is where delivery occurred and where the motorcycles are located." *Id.* at *4-5 (citing *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915-16 (7th Cir. 2006); *Curran v. Kwon*, 153 F.3d 481, 488 (7th Cir. 1998)). The court next held that Plaintiffs themselves could only assert claims under the laws of Illinois and Florida, the two states in which they reside. *Id.* at *6. The court clarifies here that this finding was not intended as an anticipatory bar or limitation on class certification or representation. Rather, the court interpreted Honda's motion to dismiss as challenging Plaintiffs' standing to sue in their own rights. To the extent Plaintiffs may only themselves recover for damages suffered under the laws of the states in which they reside, the court analyzed their claims under those laws alone.

With respect to the allegations of consumer fraud, the court dismissed Plaintiffs' claims under the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*, and the Florida Deceptive and Unfair Trade Practices Act, Fl. Stat. §§ 501.201 *et seq.*, for failure to plead fraud with particularity. *Id.* at *8-10. The court found that Mr. Gribbins' claims that Honda breached express and implied warranties were untimely, and dismissed the remaining breach of implied warranty claims for lack

2

of privity between Plaintiffs and Honda. *Id.* at *10, 11 (citing 810 ILCS 5/2-725(1); *Rothe v. Maloney Cadillac, Inc.*, 119 Ill. 2d 288, 292, 518 N.E.2d 1028, 1029 (1988); *Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 347 Ill. App. 3d 828, 832, 807 N.E.2d 1165, 1169 (1st Dist. 2004); *Weiss v. Johansen*, 898 So.2d 1009, 1012 (Fla. Dist. Ct. App. 2005)). Finally, the court dismissed Plaintiffs' unjust enrichment claims because Mr. Gribbins had an adequate remedy at law, and the remaining Plaintiffs failed to allege that they lacked an express warranty precluding such claims. *Id.* at *12. Thus, the only claims still at issue were Mr. Lantz's, Mr. Allen's and Mr. Alvord's express warranty claims under Florida law. The court gave Plaintiffs until July 9, 2007 to file an amended complaint consistent with this opinion. (Minute Order of 5/17/07, Doc. 41.)

Six individuals (the "Intervenors") are now petitioning the court for leave to intervene in this action as plaintiffs, and the current named Plaintiffs seek leave to file an Amended Complaint incorporating new allegations and claims relating to these individuals. For the reasons set forth here, the petition to intervene and to file the Amended Complaint is granted.

## **BACKGROUND**

The facts of this case are set forth in detail in the court's May 14, 2007 opinion, and this opinion assumes the reader's familiarity with that earlier decision. *Lantz*, 2007 WL 1424614, at *1-3.

**A.     The Intervenors**

Like the current named Plaintiffs, the Intervenors all purchased Honda Gold Wing GL1800 motorcycles and claim that they have personally experienced and been damaged by the wobble problem. Clifford Harrelson purchased his 2006 Gold Wing GL1800 in Augusta, Kansas on August 25, 2006. (Int. Mot. ¶ 5.) After riding the motorcycle for less than ten miles, he noticed a severe wobble at speeds between 30 and 40 m.p.h. Mr. Harrelson informed his Honda dealer about the problem and was told that the dealership had received a lot of similar complaints. (*Id.*)

3

Lon Hebert is a citizen of Texas who purchased a 2006 Gold Wing in Corinth, Mississippi in November 2005. (*Id.* ¶ 6; Amended Complaint ("AC") ¶ 11.) He first noticed a severe wobble in February 2006, after riding the motorcycle approximately 4,000 miles. Mr. Hebert told his Honda dealership that he experienced a wobble at speeds of 40 m.p.h. through deceleration to 30 m.p.h., and was told that it was a characteristic of the GL1800. (*Id.*) The dealership charged Mr. Hebert an installation fee to replace the front tire, but this did not eliminate the wobble. Neither did the addition of a super brace to the front forks. Mr. Hebert ultimately replaced the existing bearings with tapered bearings, which solved the problem, but Honda has refused to pay for any of the repairs. (*Id.*)

John Tilly, a resident of Louisiana, noticed a severe wobble on his Gold Wing GL1800 immediately after he bought it in Lafayette, Indiana on January 10, 2006. (*Id.* ¶ 7; AC ¶ 12.) Mr. Tilly told the Honda dealership that the wobble occurred at speeds between 35 and 40 m.p.h. The dealership confirmed that it was aware of the problem, but refused to fix the motorcycle. (*Id.*)

DeWayne Rector purchased his new 2005 Gold Wing in Logansport, Indiana in August 2005. (*Id.* ¶ 8.) After riding the motorcycle for approximately 10,000 miles, he noticed a severe wobble during deceleration below 40 to 45 m.p.h. The Honda dealership told Mr. Rector to replace the tires or adjust the steering head bearings and, if those measures did not work, to replace the steering head bearings. (*Id.*) Replacing the bearings was not, however, covered under Mr. Rector's warranty and would require over six hours of labor. Mr. Rector temporarily solved the wobble problem by over-tightening the steering head bearing, but the wobble returned after approximately 1,500 miles of riding. (*Id.*)

Henry Seppi, a resident of Delaware, has owned four Gold Wing motorcycles, including the GL1800 he purchased in Keyser, West Virginia in 2004. (*Id.* ¶ 9; AC ¶ 14.) He noticed a severe wobble on the GL1800 after riding it approximately 10,000 miles. When Mr. Seppi contacted his Honda dealership, he was told that he should not take his hands off the handle bars. (*Id.*)

4

Kevin Garthe is a resident of Illinois, but he purchased his new Gold Wing in Union City, Tennessee in 2005. (*Id.* ¶ 10; AC ¶ 15.) Within months of the purchase, he noticed a severe wobble at 15 m.p.h. that continued to get worse over time. At the dealership's recommendation, Mr. Garthe purchased and installed a fork brace, but this did not eliminate the wobble. To date, Honda has refused to fix the problem. (*Id.*)

**B.     The Amended Complaint**

In their amended complaint, Plaintiffs seek to create four alternative classes of Gold Wing purchasers. The first is a nationwide class that is subject to either California law or the laws of all other states ("Class I"). (AC ¶ 72(a).) The second class ("Class II") includes all persons who purchased GL1800 motorcycles in states that do not require privity of contract in order to recover for breach of implied warranty.[1] (*Id.* ¶ 72(b).) Class III is comprised of all Gold Wing GL1800 purchasers who live in the states where Plaintiffs (including Intervenors) reside: Delaware, Florida, Illinois, Indiana, Kansas, Louisiana, and Texas. (*Id.* ¶ 72(c).) The fourth class includes only Mr. Hebert, Mr. Tilly, Mr. Rector, and Mr. Seppi, on behalf of Gold Wing GL1800 purchasers who live in their states of residence (i.e., Delaware, Indiana, Louisiana, and Texas). (*Id.* ¶ 72(d).)

Counts I through V presume the certification of a nationwide class subject to California law, a position already rejected by the court. Thus, these Counts have been realleged only for purposes of appeal and need not be addressed here. (AC at 25 n.4.) Alternative Count I is asserted on behalf of Class I, and alleges breach of express warranty under the laws of the District of Columbia and all states except California. Alternative Count II, asserted on behalf of Class II, alleges breach of state implied warranties in all states not requiring privity of contract. Alternative Count III is

---

[1]     These states include Alaska, Arkansas, Colorado, Delaware, Hawaii, Indiana, Kentucky, Louisiana, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Dakota, Oklahoma, Pennsylvania, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, and Wyoming, as well as the District of Columbia. (AC ¶ 72(b).)

asserted on behalf of Class III, and alleges breach of state express warranties in the states where Plaintiffs and Intervenors reside. Alternative Count IV, asserted on behalf of Class IV, alleges breach of state implied warranties on behalf of purchasers who reside in Delaware, Indiana, Louisiana, and Texas.

## DISCUSSION

**A.  Standards for Intervention**

Under Federal Rule of Civil Procedure 24(a), a party may seek intervention as of right if he has "an interest" and is "so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." *Ligas ex rel. Foster v. Maram*, 478 F.3d 771, 773 (7th Cir. 2007) (quoting FED. R. CIV. P. 24(a)(2)).  A court must allow intervention as of right only where parties establish that: "(1) their motions to intervene were timely; (2) they possess an interest related to the subject matter of the . . . action; (3) disposition of the action threatens to impair that interest; and (4) the [named Plaintiffs] fail to represent adequately their interest." *Id.* (quoting *United States v. BDO Seidman*, 337 F.3d 802, 808 (7th Cir. 2003)).  If the parties fail to establish any one of these elements, the petition may be denied. *Id.*  Unlike intervention as of right, permissive intervention under Rule 24(b) "is within the discretion of the district court where the applicant's claim and the main action share common issues of law or fact and where there is independent jurisdiction." *Id.* at 775 (citing *Security Ins. Co. of Hartford v. Schipporeit, Inc.*, 69 F.3d 1377, 1381 (7th Cir. 1995)).

The Intervenors argue that they should be allowed to intervene as plaintiffs in this case both as of right and permissively because they satisfy all the necessary requirements.  Plaintiffs agree and insist that the amended complaint should be accepted as submitted with the new intervenor-plaintiffs and related allegations.  Honda does not object in principle to the filing of the amended

6

complaint. The Company argues, however, that any such complaint cannot include the Intervenors as plaintiffs because intervention is improper in this case under either theory.

As discussed below, the court concludes that permissive intervention is proper in this case and, thus, there is no need to address intervention as of right.

**B.      Permissive Intervention**

The Intervenors argue that they should be allowed to intervene under Rule 24(b) because common questions of law and fact exist; intervention would not impact the rights of the original parties; and the court has independent jurisdiction over the proposed claims.  (Int. Mot. ¶¶ 21, 22.) In determining whether to grant permissive intervention, the court should consider such factors as undue prejudice; delay; whether the intervenors' interests are adequately represented by the other parties; and "whether [the intervenors] will significantly contribute to the full development of the underlying factual issues in the action and to just and equitable adjudication of the legal questions presented."  *Riverstone Group, Inc. v. Big Island River Conservancy Dist.*, No. Civ. A. 05-4020, 2005 WL 2001154, at *5 (C.D. Ill. Aug. 11, 2005) (quoting *National Wildlife Federation v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983)).

It is undisputed that, like Plaintiffs, the Intervenors all allege that they purchased Gold Wing GL1800 motorcycles for their personal use; that they experienced a wobble when driving at certain speeds; and that Honda refused to fix the problem.  Honda argues that this is insufficient to establish common issues of law or fact because the claims "arise out of completely different transactions than those at issue in this case, involve completely different property than Plaintiffs' claims, and are brought under the laws of states different from the states in which Plaintiffs reside." (Def. Resp., at 8.)  The Intervenors disagree, identifying a variety of common issues, including (1) whether Honda's GL1800 Gold Wing motorcycles were defectively designed, rendering them dangerous to drive; (2) whether Honda knew or should have known that the Gold Wings were defectively designed; (3) whether Honda knowingly concealed the defective design; and (4) whether

7

Honda failed to recall or sufficiently repair the defective Gold Wings. (Pl. Reply, at 12.) The court is satisfied that for purposes of a Rule 24(b) motion to intervene, Plaintiffs and Intervenors share common issues of fact.

Honda argues, however, that the petition to intervene is premature because no class has yet been certified. Honda also objects that intervention would prejudice the Company and significantly expand the scope of discovery. (Def. Resp., at 6, 9.) For both propositions, Honda directs the court to *Coburn v. DaimlerChrysler Servs. North America, L.L.C.*, 218 F.R.D. 607 (N.D. Ill. 2003), in which the plaintiffs filed a putative class action on behalf of themselves and other African-Americans and Hispanics in Illinois and Iowa who applied for financing with the defendant in connection with the purchase of a vehicle. *Id.* at 608. The plaintiffs alleged that, due to the defendant's discriminatory practices and policies, they paid higher interest rates than should have been available to them. *Id.* Four Hispanic individuals from Texas sought permissive intervention, arguing that like the plaintiffs, they sought to purchase cars from Chrysler Motors dealerships and allegedly paid higher interest rates than should have been available. *Id.* at 609.

The court agreed that the proposed intervenors shared a common question of law or fact with the plaintiffs, and that the court had independent jurisdiction over the proposed claims. *Id.* at 609-10. The court therefore considered whether there was "sufficient commonality between the questions of fact so that intervention will not unduly delay or prejudice the adjudication of the original parties' rights." *Id.* at 610. The court first observed that the intervenors' motion was "somewhat premature" because the court had not yet certified a class. *Id.* The court also rejected the intervenors' assertion that the scope of discovery would not be significantly broadened by their presence. To the contrary, "[b]y adding the Houston Zone, intervention would nearly double the scope of discovery." *Id.* The court noted that "[a]dding Texas to th[e] mix will only lessen the chances for class certification," and expressed concern that "granting intervention could lead to a torrent of motions to intervene from other parts of the country, which would further prejudice the

8

adjudication of the original parties' rights." *Id.* The court acknowledged that discovery had not yet begun in the case, but held that this one factor did not outweigh the court's concerns about the scope of discovery and the length and complexity of the trial. *Id.* at 611. Thus, the court denied the motion to intervene.

The court disagrees that *Coburn* stands for the proposition that intervention is never appropriate prior to class certification. 218 F.R.D. at 610 (noting motion was "somewhat premature" but continuing analysis under Rule 24(b)). *See also Mirfasihi v. Fleet Mortg. Corp.*, No. 01 C 722, 2004 WL 2609184, at *3 (N.D. Ill. Nov. 17, 2004) (granting permissive intervention where "[a] class has not been certified nor has a determination been made that the existing plaintiff is an adequate class representative or that putative lead counsel is suitable. The intervention question does not bear on these issues.") Unlike in *Coburn*, moreover, the current named Plaintiffs may not adequately represent the interests of putative class members. As noted, none of the named Plaintiffs has standing to pursue breach of implied warranty claims in his own right. *See In re Bridgestone Sec. Litig.*, 430 F. Supp. 2d 728, 740 (M.D. Tenn. 2006) (in securities fraud class action, granting intervention as of right to institutional investor where named Lead Plaintiff did not purchase stock during the class period and could "no longer participate in this case," and where no other institutional investor was already a plaintiff party).

Honda is correct that the Intervenors could file individual actions in each of their respective states of residence, but "requiring individual parties to file separate lawsuits while a potential class action is pending would unnecessarily multiply litigation, lead to potentially different results and defeat the purpose of class action lawsuits." *In re Bridgestone Sec. Litig.*, 430 F. Supp. 2d at 740. *See also E.E.O.C. v. Regis Corp.*, No. 99 C 8270, 2001 WL 1911025, at *2 (N.D. Ill. Jan. 17, 2001) (granting permissive intervention where the intervenors "could possibly initiate their own lawsuits paralleling the litigation at hand, but they would likely be burdened by unfavorable rulings in the

pending litigation, though they were not parties to it," and "it would be a waste of time and resources to allow multiple lawsuits to proceed.")

Honda expresses concern that intervention "might significantly expand the scope of discovery." (Def. Resp., at 9.) This case, however, is still in the pleading stage and discovery has not yet begun. *See Wilfong v. Rent-A-Center, Inc.*, No. 00-CV-0680-DRH, 2001 WL 578262, at *2 (S.D. Ill. May 14, 2001) (permitting the EEOC to intervene before discovery started and before a class had been certified). Nor is the court concerned that it will receive a "torrent of motions to intervene from other parts of the country." *Coburn*, 218 F.R.D. at 610. In *Coburn*, the only basis for denying such motions would have been timeliness; here, the motion to intervene is being granted solely to add named plaintiffs with viable claims for breach of implied warranty, and to add an Illinois plaintiff whose breach of express warranty claim is not barred by the statute of limitations. *Id*. Prior to a decision on class certification, it does not appear to the court that there will be any basis for further intervention.

The court does caution that "[e]ach additional plaintiff and putative class member brings with it new questions of fact," which potentially "lessen[s] the chances for class certification." *Id*. This, however, is a matter for Plaintiffs to address in their motion for class certification.

## CONCLUSION

For the reasons stated above, the Intervenors' Petition to Intervene and Plaintiffs' Motion for Leave to File Consolidated Amended Complaint [Doc. 42] is granted. The parties are directed to proceed with discovery on class certification.

ENTER:

Dated: September 27, 2007

*Nan R. Nolan*

NAN R. NOLAN
United States Magistrate Judge